1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BRENDA ARTHUR, an individual,　)
　　　　　　　　　　)
　　　　　Plaintiff,　　)
　　　　　　　　　　)
　　　　　　　　　　)
　　vs.　　　　　)
　　　　　　　　　　)
WHITMAN COUNTY, a public　)
entity; JOE REYNOLDS, an　)
individual,　　　　　)
　　　　　　　　　　)
　　　　　Defendants.　)
_____　)

No. CV-12-365-LRS

**ORDER RE SUMMARY
JUDGMENT MOTIONS**

**BEFORE THE COURT** are Defendant Whitman County's Motion For
Summary Judgment (ECF No. 24) and Defendant Joe Reynolds' Motion For
Summary Judgment (ECF No. 26).  These motions were heard with oral argument on
May 29, 2014.

I. BACKGROUND

This action was originally filed in Whitman County Superior Court and
removed here on May 25, 2012. (ECF No. 2).  Defendant has been employed by the
Whitman County Assessor's Office since 2000.  During her employment, she has
been supervised by Defendant Joe Reynolds, the elected Whitman County Assessor.
Plaintiff alleges that during her employment, she has been sexually harassed by
Reynolds.  Plaintiff asserts causes of actions against Whitman County and Reynolds
under Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et. seq.*, and the
Washington Law Against Discrimination (WLAD), RCW Chapter 49.60, for a

**ORDER RE SUMMARY
JUDGMENT MOTIONS -**　　　**1**

sexually hostile work environment and for retaliation. She also asserts common law causes of action for outrage and negligent infliction of emotional distress. The court previously dismissed Plaintiff's negligent supervision claim against Whitman County (ECF No. 35).

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to proven that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the

**ORDER RE SUMMARY JUDGMENT MOTIONS -**      **2**

claim.  *Celotex*, 477 U.S. at 322-23.

## III.  DISCUSSION

### A.  Timeliness (WLAD Hostile Work Environment Claim)

The statute of limitations for WLAD actions involving an alleged hostile work environment is three years.  *Antonius v. King County*, 153 Wn.2d 256, 261-62, 103 P.3d 729 (2004).  Defendants therefore assert that because Plaintiff's lawsuit was filed in July 2011, her WLAD claims can only be based on conduct that occurred after July 2008.[1]  Defendants assert Plaintiff cannot go forward on the alleged conduct that took place during August 2006, and during February or March 2008.

In *Antonius*, the Washington Supreme Court concluded that the U.S. Supreme Court's analysis in *National R.R. Passenger Co. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002), regarding Title VII hostile work environment claims, should be applied to WLAD claims.  Where a plaintiff alleges that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" *Morgan*, 536 U.S. at 116, (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367 (1993)), these acts "collectively constitute one 'unlawful employment practice.'" *Id*. at 117.  It does not matter "that some of the component acts of the hostile work environment fall outside the statutory time

_____

[1]  Whitman County says Plaintiff's Complaint was filed on July 7, 2011, whereas Reynolds says it was filed on July 15.  Plaintiff filed a First Amended Complaint in May 2012 adding her federal Title VII claims.  She did so after receiving a Right To Sue letter from the Equal Employment Opportunity Commission (EEOC) in February 2012, and thereafter filing a Motion For Filing An Amended Complaint which was granted by the Whitman County Superior Court.  Whitman County then promptly removed the case to federal court.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -       3**

period." *Id*. As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability." *Id*.

As the Washington Supreme Court observed in *Antonius*, the U.S. Supreme Court in *Morgan* "treated individual discriminatory acts as constituting a unitary, indivisible hostile work environment claim," a "view . . . in contrast to previous case law from the [Washington] Court of Appeals treating the discriminatory acts as a continuing violation giving rise to an equitable exception to the statute of limitations." 153 Wn.2d at 258-59.[2] The continuing violation doctrine was rejected in *Morgan*. *Id*. at 263. According to the U.S. Supreme Court in *Morgan*:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. [Citation omitted]. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, **a single act of harassment may not be actionable on its own**.

536 U.S. at 115 (emphasis added).

In *Morgan*, the plaintiff, in support of his hostile environment claim, presented evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets. The Court concluded that "[a]lthough many of the acts upon which his claim depends occurred outside the . . . filing period, we cannot say that they are not part of the same actionable hostile environment claim." *Id*. at 120-21. "Such claims are based on the cumulative effect of individual acts." *Id*. at 115. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment

---

[2] Hence, the continuing violation case law cited by Defendant Reynolds, *Washington v. The Boeing Co.*, 105 Wn.App. 1, 8-9, 19 P.3d 1041 (2000), no longer applies.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -        4**

practice.'" *Id*. at 117, quoting 42 U.S.C. §2000e-5(e)(1).  Employers, however, are not left defenseless against employees who bring hostile work environment claims extending over long periods of time.  They have recourse when a plaintiff unreasonably delays filing a charge.  *Morgan*, 536 U.S. at 120.  An employer may raise a laches defense which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant.  *Id*. at 121.

According to Plaintiff, in August 2006, Reynolds "made inappropriate comments about me and a co-worker being romantically involved while on work time and away from the office to other employees." (Arthur Declaration, ECF No. 43 at Paragraph 4; Arthur Depo., ECF No. 44-1 at pp. 90-92).  In February or March 2008, Plaintiff says Reynolds made inappropriate comments of a sexual nature to another female staff member while in the workplace. (Arthur Declaration, ECF No. 43 at Paragraph 5).  With regard to the latter allegation, Plaintiff does not offer much in the way of detail.[3]  Nonetheless, as in *Morgan*, this court cannot say these alleged acts are not part of the same actionable hostile environment claim.  The alleged acts are similar to the alleged acts after July 2008, and more importantly, involve the same alleged perpetrator (Reynolds).  The fact the February or March 2008 comments were directed to another female staffer does not matter.  In *Morgan*, the plaintiff "presented evidence from a number of **other** employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets." (Emphasis added).

Reynolds asserts alleged acts that occurred in 2006 are too remote to be

---

[3]  Contrary to Defendants' assertion, Plaintiff does not rely "primarily" on the April 2010 Whitman County Human Resources Investigation Report.  Plaintiff relies on her own recollection of what she remembers Reynolds saying to her in August 2006 and to the other female staffer in February or March 2008.  Plaintiff indicates these alleged comments by Reynolds were made in Plaintiff's presence.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -        5**

included as part of Plaintiff's hostile environment claim and should be barred pursuant to the laches doctrine.  The court disagrees.  August 2006 is less than two years from July 2008.  Plaintiff's actionable WLAD hostile environment claim properly includes the alleged incidents which occurred prior to July 2008.[4]  It does not matter that these alleged incidents- component acts of the hostile work environment- fall outside the statutory time period and are not actionable on their own.  A hostile work environment claim is composed of a series of separate acts that "collectively constitute **one** 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (emphasis added).  As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability." *Id*.  That is the case here.  Most of the alleged acts contributing to Plaintiff's hostile environment claim occurred within the filing period applicable under the WLAD (after July 2008 and within three years of the filing of Plaintiff's original complaint).[5]

### B.  Adequacy of Charge Of Discrimination (Title VII)

Under the WLAD, it is not a prerequisite to filing a civil suit that one must first file a charge with the Washington State Human Rights Commission (WSHRC).  A

---

[4] Plaintiff testified at her deposition that prior to 2006, Reynolds told her and other female staffers on more than one occasion that they had "cute butts." (Arthur Dep. at pp. 26-30).  It is unclear whether Plaintiff intends to include this as part of her hostile work environment claim.  Her Charge of Discrimination filed with the Washington Human Rights Commission (WSHRC) indicated the earliest date of discrimination was August 1, 2006.  (ECF No. 28-1).

[5] At this time, the court makes no determination regarding the admissibility of evidence that Reynolds harassed other female staffers in 1999 and 2001.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -**        **6**

charge may be filed. RCW 49.60.230. Filing a charge is, however, a prerequisite to bringing a federal Title VII claim. 42 U.S.C. §2000e-5(e)(1).

Plaintiff's First Amended Complaint alleges that "[on] or about November 17, 2010, during training on sexual harassment which all employees of Defendant Whitman County were required to attend, Plaintiff was used as an example of a harassment complaint in written materials distributed to all attendees without her knowledge or consent, causing her severe embarrassment and emotional distress." The First Amended Complaint alleges that as a result of sexually harassing and retaliatory conduct, she was instructed to work from home. (First Amended Complaint at Paragraphs 2.20 and 2.22).

In the "Retaliation" cause of action section of her First Amended Complaint, Plaintiff alleges:

> Defendants retaliated against Plaintiff through their actions described above including, but not limited to, instructing her to work from her home and using her as an example of a harassment complaint in written materials distributed to employees of Defendant Whitman County without her knowledge or consent, because of her protected activity in complaining about the sexually harassing conduct of Defendants.

(First Amended Complaint at Paragraph 4.3).

In her Charge of Discrimination filed with the WSHRC on November 9, 2011 (ECF No. 28-1), Plaintiff alleged:

> On November 17, 2010, all of Respondent employees were required to attend sexual harassment training. Because of the ongoing sexual harassment that I had endured at the hands of Joe Reynolds, the County Assessor, which was subsequently validated during an internal investigation, I was not keen on attending, but it was my obligation and duty to do so. During the first training session, one of the characters used in the training was named Brenda. When it was pointed out to the trainer that Brenda was a real person who had endured sexual harassment in the work place, the trainer changed the power point presentation[.] [T]he written hand out materials, however, still contained the name of Brenda. I had to incur unwarranted humiliation during this presentation. Since that time, I have been retaliated against by having my hours worked changed without notification.

**ORDER RE SUMMARY
JUDGMENT MOTIONS -        7**

Defendant Reynolds asserts that because the Charge of Discrimination does not allege it was retaliation to use the name "Brenda" during the workshop or that it was retaliation to instruct her to work from home, those particular aspects of her retaliation claim cannot be included in this lawsuit.  In other words, the argument is that Plaintiff did not exhaust her administrative remedies with regard to these particular allegations and therefore, this court does not have subject matter jurisdiction to consider them now.

In order for a court to have subject matter jurisdiction over a Title VII claim, an individual is required to exhaust his administrative remedies by either "filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B.*, 276 F.3d at 1099.  "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication." *Id*.

First, the Charge of Discrimination does indicate that using the name "Brenda" during the trainer's presentation constituted retaliation.  A reasonable agency investigation would have delved into the use of the name "Brenda" during the training, whether that was in written materials or during the oral presentation.

Secondly, the allegation that it was retaliation to instruct Plaintiff to work from home is something which it is reasonable to believe would have been investigated had an investigation been conducted.  The EEOC determined it would not investigate the Charge and issued a Right To Sue Letter on February 17, 2012. (ECF No. 28-1 at p. 7).  Although allegations of discrimination not included in a plaintiff's charge generally may not be considered, subject matter jurisdiction extends over all allegations of discrimination that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *Freeman v. Oakland Unified School District*, 291 F.3d 632, 636 (9th Cir. 2002), quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -**      **8**

1091, 1100 (9ᵗʰ Cir. 2002).  A reasonable investigation of Plaintiff's Charge would have included her allegation that it was retaliation to instruct her to work from home. This is because her Charge alleged she had been retaliated against by having her hours worked changed without notification.  It is apparent from the evidence the Plaintiff has offered on summary judgment that this issue (hours worked changed without notification) arose precisely because Plaintiff was working from home as she had been instructed.  It was on May 4, 2010 that Plaintiff was removed from paid administrative leave to work from her home.  (Arthur Declaration, ECF No. 43 at Paragraph 28).  Plaintiff alleges that on or about the time she filed her Charge of Discrimination (November 9, 2011), "I was verbally informed by my supervisor, Jim Hawkes, that I could no longer work my hours on the weekends as I had been doing up until that time- I had to work weekdays from 8:00 a.m. to 5:00 p.m. because Robin Jones and Joe Reynolds did not want me working weekends." (*Id*. at Paragraph 31). Plaintiff further alleges she was not provided official written notice about the "no comp-time policy change until February, 2012." (*Id*. at Paragraph 32).  Because she could no longer use compensatory time, she was no longer able to work hours at home other than from 8:00 a.m. to 5:00 p.m..

The court has subject matter jurisdiction to consider all of the allegations of retaliation set forth in Plaintiff's First Amended Complaint. It also has subject matter jurisdiction to consider all of the allegations of sexual harassment set forth in the First Amended Complaint.  Although the Charge of Discrimination does not set forth those allegations in detail, a reasonable agency investigation would have delved into them by looking into the internal investigation conducted by Whitman County Human Resources which is specifically referred to in the Charge.  That internal investigation spawned an April 1, 2010 report (ECF No. 44-15) which sets forth in detail the Plaintiff's allegations of sexual harassment from August 2006 onward.  Those allegations are, of course, repeated in Plaintiff's First Amended Complaint.

///

**ORDER RE SUMMARY JUDGMENT MOTIONS -    9**

1  The allegations in the Charge of Discrimination were sufficient to provide the
2  Defendants with fair notice of Plaintiff's sexual harassment and retaliation
3  allegations.  Both of the Defendants were familiar with the internal investigation
4  report dated April 1, 2010, and they certainly knew that on May 4, 2010, Plaintiff's
5  administrative leave had ended and she was instructed to work from home.

6

7  **C.  Sufficiency Of Hostile Work Environment Claims**
8  **(Title VII and WLAD)**

9  To succeed on a Title VII hostile work environment based on sex, a plaintiff
10 must prove the employee was subjected to verbal or physical conduct of a sexual
11 nature, that the conduct was unwelcome, and that the conduct was sufficiently severe
12 or pervasive to alter the terms and conditions of her employment and create an
13 abusive work environment.  *EEOC v. California Psychiatric Transitions, Inc.*, 644
14 F.Supp.2d 1249, 1274 (E.D. Cal. 2009), citing *Rene v. MGM Grand Hotel, Inc.* 305
15 F.3d 1061, 1065 (9th Cir. 2002)(en banc).  The work environment "must be both
16 objectively and subjectively offensive, one that a reasonable person would find
17 hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher*
18 *v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275 (1998).  Whether the
19 conduct is severe or pervasive is determined by reference to the following factors:
20 "the frequency of the discriminatory conduct; its severity; whether it is physically
21 threatening or humiliating or a mere offensive utterance; and whether it unreasonably
22 interferes with an employee's work performance."  *California Psychiatric*
23 *Transitions, Inc.*, 644 F.Supp.2d at 1274, quoting *Kortan v. California Youth Auth.*,
24 217 F.3d 1104, 1110 (9th Cir. 2000).  The required showing of severity of the
25 harassing conduct varies inversely with the pervasiveness or frequency of the
26 conduct.  *Id.*, citing *Ellison v.Brady*, 924 F.2d 872, 878 (9th Cir. 1991).  The offensive
27 conduct need not, however, be both severe and pervasive.  It need be only severe or
28 pervasive.  *Id.* at n. 20.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -        10**

The WLAD "substantially parallels Title VII." *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn.App. 774, 793, 120 P.2d 579 (2005).  To establish a prima facie hostile work environment claim under the WLAD, a plaintiff must show: 1) the harassment was unwelcome, 2) the harassment was because plaintiff was a member of a protected class; 3) the harassment affected the terms and conditions of employment; and 4) the harassment can be imputed to the employer.  *Antonius*, 153 Wn.2d at 261.  The third element requires the harassment be "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment[,] . . . to be determined with regard to the totality of the circumstances. *Id*., quoting *Glasgow v. Ga-Pac. Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985).

According to the Ninth Circuit Court of Appeals, motions for summary judgment in an employment discrimination case must be carefully examined in order to zealously guard an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).  An employee need only produce "very little evidence" to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a "searching inquiry," one that is most appropriately conducted by the factfinder upon a full record. *Schnidrig v. Columbia Mach, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).  Washington courts agree that in employment discrimination cases, summary judgment in favor of the employer is seldom appropriate.  *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 144, 94 P.3d 930 (2004).

Here, the Plaintiff has presented sufficient evidence through her deposition testimony (ECF No. 44-1), her declaration (ECF No. 43), and the deposition

**ORDER RE SUMMARY JUDGMENT MOTIONS -       11**

testimony of others[6], to create a genuine issue of material fact whether she was subjected to a sexually hostile work environment. This evidence suggests more than "casual, isolated or trivial manifestations of a discriminatory environment."[7]  A jury must decide what occurred and whether it was motivated because of Plaintiff's gender, was "unwelcome," and was severe or pervasive enough to have affected the terms and conditions of her employment.

Plaintiff has asserted common law claims for outrage (intentional infliction of emotional distress) and negligent infliction of emotional distress (NIED) based on the hostile work environment and retaliatory conduct to which she asserts she was subjected.   Because the factual basis for Plaintiff's outrage and NIED claims is the same as her WLAD hostile work environment and retaliation claims, her avenue for recovery is limited to her WLAD claims.  *Haubry v. Snow*, 106 Wn.App. 666, 678, 31 P.3d 1186 (2001).  Plaintiff acknowledges this is so and concedes her outrage and NIED claims should be dismissed.

------

[6] For example, Laurie Line, a co-worker in the assessor's office, testified that from 2005 to 2010, it was "probably once a week" that Reynolds made comments of a sexual nature to female staff members.  (ECF No. 44-6 at p. 110).

[7] This conclusion is arrived at without consideration of the April 1, 2010 Whitman County Human Resources report (ECF No. 44-15) which found that Reynolds had violated the Whitman County Harassment Policy and that Plaintiff's claim of a hostile work environment based on sexual harassment had been substantiated.  Presently, the court makes no finding whether this report will be admissible as evidence at trial through the testimony of Kelli Campbell, the Human Resources Director at the time.  The same goes for the "Notes" prepared by Campbell in conjunction with her investigation.  (ECF No. 44-10).  These "Notes" refer to certain admissions made by Reynolds regarding the "culture" in the assessor's office.

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -**       **12**

**D.  Sufficiency Of Retaliation Claims (Title VII and WLAD)**

Section 704(a) of Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).  The WLAD states:  "It is an unfair practice for any employer . . . to discriminate against any person because he or she has opposed any practices forbidden by [WLAD], or because he or she has filed a charge, testified, or assisted in any proceeding under [WLAD]."  RCW § 49.60.210(1).  RCW 49.60.220 makes it "an unfair practice for any person to aid, abet, encourage, or incite the commission of any unfair practice, or to attempt to obstruct or prevent any other person from complying with the provisions of this chapter or any order issued thereunder."

The Ninth Circuit recognizes that the framework used to analyze Title VII retaliation claims applies equally to the WLAD. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003).  To establish a *prima facie* case of retaliation under this framework, a plaintiff must demonstrate: (1) that he engaged in a protected activity; (2) that he was thereafter subjected to adverse  action; and (3) that a causal link exists between the protected activity and the adverse action.  *Id*.  To satisfy the adverse action prong, "a plaintiff must show that a reasonable  employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable [person] from making or supporting a charge of discrimination."  *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006)(quotations omitted).[8]  This is an objective standard and

---

[8]  See *Haley v. Pierce County Washington*, 2013 WL 544017 (2013) at *13 and n. 38, a WLAD retaliation case, in which the Washington Court of Appeals found "persuasive" this analysis by the U.S. Supreme Court.

**ORDER RE SUMMARY JUDGMENT MOTIONS -        13**

an individual's claim must be analyzed in the full context of the facts of the case. *Id*. at 69. A causal link can be shown by direct evidence or inferred from circumstantial evidence such as the temporal proximity between the protected activity and the adverse action, and whether the employer knew that the employee engaged in protected activities. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

On or about February 12, 2010, Plaintiff submitted a complaint to Whitman County regarding the alleged harassing conduct of Reynolds. She was immediately placed on paid administrative leave. There is no dispute that this complaint constituted "protected activity." The issue is whether what occurred thereafter constituted adverse action which is causally linked to the protected activity.

According to Plaintiff, on or about April 22, 2010, a meeting was held between Reynolds, union representative Steve Bruchman, and Whitman County Human Resources Director Kelli Campbell at which time Reynolds suggested Plaintiff work from her home as an appraiser. Plaintiff does not dispute that on April 27, 2010, she and Bruchman entered into an agreement for Plaintiff to start working from home, effective May 4, 2010. The memo of the agreement states in relevant part:

> Mr. Reynolds proposed that Ms. Arthur work from home as an appraiser. The goal being that Ms. Arthur will continue to work as an Appraiser, outside the office, until such time that she is agreeable to returning to the Whitman County Assessor's Office in the Courthouse or Joe Reynolds is no longer in office, whichever comes first . . . . The offer was accepted by Ms. Arthur . . . . As a result of the agreement, Ms. Arthur will be removed from paid administrative leave effective May 4, 2010.

(ECF No. 28-4).

Plaintiff worked from home from May 4, 2010 until on or about September 17, 2012. During her deposition, Plaintiff acknowledged that since September 17, 2012, she goes into the office (the Whitman County Assessor's Office) on Wednesday afternoons and continues to work there through the end of the week. When she is in the office on those days, Reynolds is not present. Plaintiff acknowledges that since February 12, 2010, Reynolds has not done anything to her that she considers unprofessional, harassing, condescending or offensive. She testified that she enjoys

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -**        **14**

her current work situation in which she goes into the office for a half the week when Reynolds is not there, and works the other half of the week remotely from her home. Plaintiff testified she has not spoken to Reynolds since February 12, 2010. (ECF No. 28-7 at pp. 67-69).

Notwithstanding the fact Plaintiff voluntarily agreed to work from home, Plaintiff contends it is the only choice she really had because the other options were to continue working with Reynolds or to quit her job. In February 2012, Reynolds appointed Robin Jones to be the office administrative supervisor. At approximately that same time, a new policy was implemented such that all assessor's office employees could no longer use compensatory time. The result was that Plaintiff was required to work at her home from 8:00 a.m. to 5:00 p.m. Monday through Friday and no longer had the flexibility to work on the evenings and during the weekends. In her declaration (ECF No. 43 at Paragraph 45), Plaintiff says that when she returned to the office in September 2012, her "suspicions were confirmed that Assessor's Office Administrative Supervisor Robin Jones and Assessor's Office staff member Laurie Line bore animosity towards me." In subsequent paragraphs of her declaration, Plaintiff indicates how this alleged animosity manifested itself. According to Plaintiff, "[a]though Defendants Whitman County and Reynolds agreed that I would only return to work on site when either Defendant Reynolds was not in the office or I agreed to come back, Ms. Jones now told me that my only choices were to come back to work on site or go on unpaid leave." (Paragraph 52). Plaintiff says she "was made to feel like I was the problem and the 'bad guy' because I had filed the Complaint against Defendant Reynolds." (Paragraph 53). The record does not indicate that Plaintiff has returned to the office full-time (that she is now there five days a week from 8 a.m. to 5 p.m.). While Jones apparently proposed an agreement to that effect (Ex. E to ECF No. 43), there is no indication that Plaintiff entered into such an agreement.

///

**ORDER RE SUMMARY
JUDGMENT MOTIONS -     15**

At the summary judgment phase in an employment discrimination case, the plaintiffs' *prima facie* burden is minimal and "does not even rise to the level of a preponderance of evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Summary judgment in favor of an employer in a discrimination case is often inappropriate because evidence commonly "contain[s] reasonable but competing inferences of both discrimination and nondiscrimination." *Kuyper v. State*, 79 Wn.App. 732, 739, 904 P.2d 793 (1995). This is the case here. While there is a reasonable competing inference of nondiscrimination (no retaliation), there is also a reasonable competing inference of discrimination (retaliation). This inference is that in response to Plaintiffs' complaint, Defendants gave Plaintiff no choice but to work from home and now, through changes in workplace policies and the actions of Jones, are attempting to coerce her into returning to the office under the same circumstances which existed before she was placed on administrative leave and began working from home (full-time work in the office with Reynolds present). A jury could find that these actions were materially adverse and might have dissuaded a reasonable person from making or supporting a charge of discrimination.

During her deposition, Plaintiff acknowledged she is not claiming that her name ("Brenda") was purposely used in the PowerPoint slides during the November 17, 2010 training session. (ECF No. 25-1 at p. 73). Pat Flannery, who was the presenter at the training session, has submitted a declaration (ECF No. 28-2). He explains that although he presented a hypothetical situation involving a person named "Brenda," he had no idea that Plaintiff had made a sexual harassment complaint against Reynolds. Furthermore, Flannery worked for an entity (Canfield Associates) which is independent from either Whitman County or Reynolds. Accordingly, what transpired at the November 17, 2010 training session cannot be considered materially adverse employment action for which Whitman County or Reynolds can be held responsible.

///

**ORDER RE SUMMARY
JUDGMENT MOTIONS -          16**

With the exception of what transpired at the November 17, 2010 training session, there is a genuine issue of material fact whether the other discrete acts of retaliation alleged by Plaintiff constitute materially adverse action by Defendants in response to protected activity. A jury will make that determination.

### E. Potential Liability Of Whitman County And Reynolds

### 1. WLAD

Because the alleged hostile work environment perpetrated by Reynolds occurred while he was acting in his official capacity as the elected county assessor, Whitman County will be liable if a jury finds in favor of Plaintiff on her WLAD claim. (See discussion in court's April 1, 2014 order (ECF No. 35) dismissing with prejudice the Plaintiff's negligent supervision claim against Defendant Whitman County ). The same goes for alleged retaliatory conduct by Reynolds. The question then arises whether this somehow precludes Reynolds from also being held liable in his personal capacity. The court concludes it does not and moreover, such a result would be unjust.

In *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 361-62, 20 P.3d 921 (2001), the Washington Supreme Court held that individual supervisors, along with their employers, may be held liable under the WLAD for their discriminatory acts because RCW 49.60.040(3), by its very terms, encompasses individual supervisors and managers who discriminate in employment. Reynolds, as the elected county assessor, is more than a mere manager or supervisor for Whitman County. Based on *Broyles v. Thurston County*, 147 Wn.App. 409, 195 P.3d 985 (2008), this court found the County and Reynolds are a "single integrated employer entity for WLAD . . . purposes." (ECF No. 35 at p. 4). This, however, this does not preclude holding Reynolds personally liable for damages for sexual harassment and retaliatory conduct. The reasoning in *Brown* applies just as much to Reynolds as it does to an individual who is not an elected county official, but rather a manager or supervisor for the

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS -        17**

county.  In *Brown*, the Washington Supreme Court considered the language of RCW 49.60.0040(3) defining "employer" as "**any person** acting in the interest of an employer, directly or indirectly, who employs eight or more persons . . . ." (Emphasis added).  The supreme court found that:

> The plain meaning of RCW 49.60.040(3), by its very terms, encompasses individual supervisors and managers who discriminate in employment.  Moreover, enabling employees to sue individual supervisors who have discriminated against them is consistent with the broad public policy to eliminate all discrimination in employment.

143 Wn.2d at 361-62.

Accordingly, Reynolds cannot avoid personal liability under the WLAD merely because he is an elected official whose actions also constitute the actions of the county itself.  The Washington Court of Appeals in *Broyles* appears to have recognized this, finding that while Thurston County, and not the elected Prosecuting Attorney, was the proper party, "[t]his [did] not exclude the possibility that the Prosecuting Attorney or his deputies could be **personally liable**."  147 Wn.App. at 409 and n. 5, citing *Brown*.  (Emphasis added).

In sum, for WLAD purposes, should a jury find that Reynolds subjected Plaintiff to a hostile work environment and/or retaliatory conduct, and award her compensatory damages, Reynolds will personally be jointly and severally liable along with Whitman County for those damages.[9]

## 2.  Title VII

In its order dismissing the common law negligent supervision claim, this court included the following footnote:

---

[9] There is no basis for separate compensatory damages awards against Whitman County and Reynolds.  Punitive damages are not available under the WLAD.  *Blaney v. International Association of Machinists And Aerospace Workers, Dist. No. 160*, 151 Wn.2d 203, 216, 87 P.3d 757 (2004).

**ORDER RE SUMMARY JUDGMENT MOTIONS -    18**

The court makes no determination, at this time, whether a
similar result pertains to the liability of Reynolds and Whitman
County under Title VII (i.e., that agency principles are
irrelevant). Identification of an "employer" under Title VII is a
question of federal law. *Burlington Industries v. Ellerth*, 524 U.S.
742, 754-55, 118 S.Ct. 2257 (1998). It is noted that under
Title VII, consistent with the law under the WLAD, liability
is automatically imputed to an employer when a harassing
supervisor is "indisputably within that class of an
employer organization's officials who may be treated
as the organization's proxy." *Faragher v. City of Boca Raton*,
524 U.S. 775, 789, 118 S.Ct. 2275 (1998).

(ECF No. 35 at p. 5, n. 3).

The Ninth Circuit Court of Appeals has held that individual liability should not

be imposed under Title VII. *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th

Cir. 1993). According to *Miller*:

The term "employer" under . . . Title VII . . . is defined to include
any agent of the employer. 42 U.S.C. §2000e(b) . . . . Thus, some
courts have reasoned that supervisory personnel and other agents
of the employer are themselves employers for the purposes of
liability. [Citations omitted].

Although this statutory construction argument is not without
merit, we are bound by *Padway* [*v. Palches*, 665 F.2d 965, 968
(9th Cir. 1982)], which, in any event, announced the better
rule. As the district court below noted, "[t]he obvious purpose
of this [agent] provision was to incorporate respondeat superior
liability into the statute." **This conclusion is buttressed by the
fact that many of the courts that purportedly have found
individual liability under the statutes actually have held
individuals liable only in their *official* capacities and not in
their individual capacities.** [Citations omitted]. Indeed, these
courts have joined this circuit in protecting supervisory employees
from liability in their individual capacities.

The statutory scheme itself indicates that Congress did not intend
to impose individual liability on employees. Title VII limits
liability to employers with fifteen or more employees, 42 U.S.C.
§2000e(b), . . . in part because Congress did not want to burden
small entities with the costs associated with litigating discrimination
claims. If Congress decided to protect small entities with limited
resources from liability, it is inconceivable that Congress intended
to allow civil liability to run against individual employees.

*Id*. (Emphasis in **bold** added).

Clearly, if Reynolds is considered to be merely an employee of Whitman

County under Title VII, he cannot be held individually liable. In that circumstance,

**ORDER RE SUMMARY
JUDGMENT MOTIONS -       19**

only Whitman County can be held liable under *respondeat superior* (agency) principles and this court would be justified in finding as a matter of law that Reynolds is a "proxy" for the county such that liability is automatically imputed to the county. Even if Reynolds is considered an employer by virtue of being the elected county assessor, he can only be held liable in his official capacity, and not in his personal capacity. Effectively, the result is that only Whitman County can be held responsible for compensatory damages under Title VII.[10]

## VI. CONCLUSION

For the purposes of Plaintiff's Title VII hostile work environment and retaliation claims, Plaintiff exhausted her administrative remedies and provided fair notice of her claims through the Charge of Discrimination she filed with WSHRC. There are genuine issues of material fact precluding summary judgment on Plaintiff's Title VII and WLAD hostile work environment claims. Alleged acts of sexual harassment committed against Plaintiff prior to July 2008 are part of these claims. With one exception, there are genuine issues of material precluding summary judgment on Plaintiffs' Title VII and retaliation claims. As a matter of law, the November 17, 2010 use of training materials with the name of "Brenda" does not constitute materially adverse action for which Defendants can be held responsible. Defendants' Motions For Summary Judgment (ECF Nos. 24 and 26) are **DENIED in**

---

[10] While punitive damages are available under Title VII against an employer, they are not authorized against a governmental employer such as Whitman County. "[P]unitive damages are not available for Title VII claims against a 'government, government agency, or political subdivision.'" *Hines v. California Public Utilities Com'n*, 2008 WL 2631361 at *11 (N.D. Cal. 2008), quoting 42 U.S.C. §1981a(b)(1).

**ORDER RE SUMMARY JUDGMENT MOTIONS -    20**

**part and GRANTED in part** as set forth above.  Plaintiffs' common law claims for outrage and NIED are **DISMISSED** as being duplicative of her WLAD hostile work environment and retaliation claims.

IT IS SO ORDERED.  The District Executive is directed to enter this order and forward copies to counsel.

**DATED** this___5th___of June, 2014.


*s/Lonny R. Suko*

_____
LONNY R. SUKO
Senior United States District Judge

**ORDER RE SUMMARY JUDGMENT MOTIONS -**        **21**